**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:19-cv-00500-DDD-MEH

DONELL J. BLOUNT, SR.,

      Plaintiff,

v.

C/O MARIN, C/O ZENDEJAS, C/O NORMAN, CAPTAIN NORMAN
MACINTOSH, LT. CORREY HARRIS, C/O BEAULIEU, LT. CAMP,
and LT. KING,

      Defendants.

---

**ORDER ADOPTING MAGISTRATE JUDGE'S
RECOMMENDATION**

---

Before the court is the recommendation (Doc. 73) of United States
Magistrate Judge Michael E. Hegarty that the court grant Defendants'
motion for summary judgment (Doc. 38). The recommendation states
that objections to the recommendation must be filed within fourteen
days after its service on the parties. (Doc. 73 at 27 n.6 (citing 28 U.S.C.
§ 636(b)(1); Fed. R. Civ. P. 72(b); and *In re Griego*, 64 F.3d 580, 583 (10th
Cir. 1995).) The recommendation was docketed September 2, 2020, and
Plaintiff Donell Blount Sr. submitted objections dated September 21,
2020, that were docketed on September 28, 2020. Doc. 74. For the fol-
lowing reasons, the court overrules Mr. Blount's objections, adopts
Judge Hegarty's Report and Recommendation, and grants Defendants'
motion for summary judgment.

## STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires the district court judge to "determine de novo any part of the magistrate judge's [recommendation] that has been properly objected to." In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). An objection is proper if it is filed within fourteen days of the magistrate judge's recommendations and specific enough to enable the "district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). In the absence of a timely and specific objection, "the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

## ANALYSIS

### I.   Timeliness

As a preliminary matter, Mr. Blount's objections are untimely. The objections are dated September 21, 2020, and they were docketed on September 28, 2020. Either date is beyond the fourteen-day time limit within which Rule 72 permits a party to object to a magistrate judge's ruling a on a dispositive error. This failure to timely submit objections, combined with a lack of clear error in Judge Hegarty's report and recommendation, is sufficient basis by itself to overrule Mr. Blount's

objections and adopt the recommendation. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150, 154 (1985)).

## II.   De Novo Review

Even if his objections weren't untimely, de novo consideration of Judge Hegarty's recommendation yields the same result. For purposes of that review, the court will not retread the background carefully explained by Hegarty in his report and recommendation. In short, Mr. Blount asserts constitutional claims for deliberate indifference, excessive force, and retaliation for exercising his right to access to the courts based on three incidents: (1) his inadvertent exposure to pepper spray while he was lifting weights at the Sterling Correctional Facility; (2) excessive force when Defendant Officer Harris shoved Mr. Blount against a wall and handcuffed him; and (3) retaliation when Defendant Officers Camp and King confiscated his kufi.

### A.  Mr. Blount's Objections to the Facts

Mr. Blount first objects to five facts stated in the recommendation's fact section: paragraphs 26, 28, 33, 36, and 39. The recommendation prefaced its recitation of the facts as including only those facts that were "undisputed" and "viewed in the light most favorable" to Mr. Blount. Doc. 73 at 2. None of Mr. Blount's factual objections merit rejection of Defendants' motion for summary judgment.

Paragraph 26 of the fact section says, "The abdomen bruising and the pain from the tight handcuffs were Blount's only injuries from being pushed up against the wall on July 10, 2017." Doc. 73 at, ¶ 26. Although Mr. Blount says "this fact is in sharp[] dispute," Doc. 74 at 1, his main objection appears to be that Judge Hegarty didn't sufficiently emphasize

the way being pushed up to the wall and coat hooks (a fact which was addressed by Judge Hegarty in the previous paragraph—paragraph 25) and having the handcuffs tightened down caused him pain. In other words, Mr. Blount does not dispute the fact as such, but the language used by Magistrate Judge Hegarty in his description. This is an insufficient basis to reject the recommendation.

Paragraph 28 of the fact section says, "On October 3, 2017, while walking in the corridor outside Dining Hall 2 at the BVCC, Defendant Captain King encountered Blount and noticed that his kufi was hanging below his baseball cap by about a half an inch to an inch." Doc. 73 at, ¶ 28. Mr. Blount objects to this fact on the basis that the encounter never happened; that Defendant Camp was the one who took Mr. Blount's Kufi; that that confiscation occurred on September 30, 2017; and that the October 3 event was fabricated by Defendants to "cover up" their actions. Doc. 74 at 2. Yet the factual support Mr. Blount relies on for this assertion, his declaration, recites a nearly identical event that merely recasts the day (from October 3 to September 30) and the prison official (from King to Camp). Doc. 55 at 21–22, ¶ 3. Mr. Blount points to no reason why the outcome of Defendants' motion should be different based on his slightly different version of the facts. And in any event, Mr. Blount appears to have admitted in his response in opposition to Defendants' motion for summary judgment that the facts as recited by the recommendation were not in dispute: he relied on prison documents stating that Officer King confiscated Mr. Blount's Kufi on October 3, 2017. Doc. 55 at 27.

Paragraph 33 of the recommendation's fact section says, "According to Blount, King and Camp confronted him together on September 30, 2017, confiscated the kufi saying they knew Blount had a 'well-publicized' lawsuit against the CDOC and saw the legal mail package Blount

received from his attorney the day before, and refused to return the kufi when Blount later asked for it." Doc. 73 at 7, ¶ 33. Mr. Blount objects to this fact because it omits several details he included in his declaration in support of his opposition to Defendants' motion. Doc. 74 at 3. Yet Mr. Blount fails to explain how the omitted details (that this allegedly was his first encounter with Officers King and Camp) require a different outcome.

Paragraph 36 of the fact section says, "Responses to Blount's grievances regarding the September 30, 2017 kufi incident, dated October 25, 2017 and December 22, 2017, informed Blount of how he could obtain his kufi—i.e., by requesting it from King. King attests that Blount never requested the kufi from him." Doc. 73 at 7, ¶ 36. Mr. Blount objects to this fact because he filled out a prison grievance form, stating "I want my kufi back." Doc. 38-13. But that same form told Mr. Blount all he had to do to receive it back was ask the officer who confiscated the Kufi for its return. *Id.* And Mr. Blount does not dispute that he never asked Officer King, or Office Harris for that matter, for the return of his kufi.

Finally, paragraph 39 of the recommendation's fact section says, "Blount believes that, as a Muslim, he must cover his head 'as much as possible' when he prays." Doc. 73 at 8, ¶ 39. Mr. Blount doesn't object to this fact or explain how it affected the outcome of recommendation in any material way. Rather he makes clear that he "believes that nothing can replace his kufi as proper headgear." Doc. 74 at 4. The court accepts this assertion, but, like his other factual objections, it is an insufficient basis to deny Defendants' motion for summary judgment.

### B. Mr. Blount's Objections on His Claim for Deliberate Indifference

Mr. Blount objects to Judge Hegarty's ruling that Defendants were not deliberately indifferent to his serious medical needs. Doc. 73 at 16; Doc. 74 at 4–9. Mr. Blount argues the record establishes that, at a minimum, Defendants Officers Webb, MacIntosh, and Marin did not provide him any medical care at all after he was exposed to pepper spray while lifting weights and that he was obviously suffering a serious medical event. Doc. 74 at 4. But he doesn't deny that Defendant Officers MacIntosh and Marin escorted him to his cell so he could take his asthma inhaler or that there is any evidence in the record to contradict Judge Hegarty's finding that Defendants were not aware of a "known or obvious" risk of serious harm after they helped Mr. Blount. Doc. 73 at 15–16. Being inadvertently exposed to pepper spray was undoubtedly extremely uncomfortable for Mr. Blount, even potentially life-threatening given his asthma. But he has presented the court with no evidence that Defendants' response to that exposure was deliberately indifferent. Mr. Blount argues that, while Defendants addressed any adverse cardiovascular reaction he might have had, they didn't do anything to address the burning sensation he experienced. Doc. 74 at 6. But Mr. Blount still has failed to present evidence that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citations omitted). The Defendants helped Mr. Blount take his inhaler and return to his cell, and there is no evidence that they should've been aware that more medical treatment was needed. The court won't overrule the magistrate judge's recommendation on this claim.

### C. Mr. Blount's Objections on his Claim for Excessive Force

Magistrate Judge Hegarty concluded that Defendants were entitled to summary judgment on Mr. Blount's claim of excessive force because the force used—Office Harris allegedly shoved Mr. Blount against the wall and handcuffed him tightly when Mr. Blount became agitated, initially refused to sit down when told to do so, and talked back to Defendant Harris when Harris told Mr. Blount to sit down—was de minimis and necessary to restore prison order. Doc. 73 at 17–18. Mr. Blount argues that this misstates the factual record presented in the light most favorable to him. Doc. 73 at 10. But Mr. Blount does not dispute the essential material facts: that he got up to leave, Officer Harris told him to sit down, Mr. Blount refused and asked Officer Harris why Mr. Blount had to do so, at which point Office Harris pushed him against the wall and handcuffed Mr. Blount. *Id.*

Judge Hegarty was correct that even if Officer Harris's action was "malevolent," that fact alone is not enough to amount to cruel and unusual punishment. Doc. 73 at 18 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Marshall v. Milyard*, 415 F. App'x 850, 852–53 (10th Cir. 2011) (quoting *Hudson*, 503 U.S. at 9). Indeed, the Tenth Circuit has noted with approval the Seventh Circuit's holding in *Dewalt v. Carter*, 224 F.3d 607, 610–11 (7th Cir. 2000), that an officer shoving a prisoner into a doorframe after the prisoner called the officer unprofessional was not cruel and unusual punishment. *Marshall*, 415 Fed. App'x at 853 (citing *Dewalt*). So too here. To be sure, shoving and other malevolent acts should not be the norm for prison discipline. But it's all too easy to Monday-morning quarterback a prison official's conduct from the calm of a

judge's chambers. And the isolated incident alleged by Mr. Blount does not arise to the level of a constitutional violation.

### III.   Mr. Blount's Objections on the Free Exercise and Equal Protection Claims

Magistrate Judge Hegarty concluded that Mr. Blount had failed to demonstrate specific facts to support the claim that the Defendants' confiscation of his kufi would chill a person of ordinary firmness to engage in continued litigation against Defendants. Doc. 73 at 22. Judge Hegarty thus recommended that judgment be entered in favor of Defendants on Mr. Blount's claim for retaliation under the First and Fourteenth Amendments. *Id.* Mr. Blount objects to this recommendation on three primary bases.

First, he argues that "even minimal infringement of upon First Amendment values constitutes irreparable injury." Doc. 74 (quoting *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989)). But the principle Mr. Blount cites from *Newsom* arose in a different context: whether a plaintiff had demonstrated irreparable harm so as to be entitled to a preliminary injunction. By contrast, Judge Hegarty identified the relevant legal standard for Mr. Blount's claim of retaliation:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 800 (2019). So, while Mr. Blount is correct that minimal

infringement of First Amendment rights is irreparable injury, that does not mean it meets the higher standard required for this claim.

Second, Mr. Blount argues that the recommendation failed to give adequate weight to the mental anguish he suffered as a result of the confiscation of his kufi. Doc. 74 at 17. For support, Mr. Blount again cites a decision from a different—and thus inapposite—context: Justice Blackmun's concurrence in *Hudson v. McMillan*, 503 U.S. 1, 14 (1992). Justice Blackmun explained that psychological harm could constitute injury for purposes of a claim for excessive force, not retaliation. *Id.* at 16. And while the court doesn't doubt that Mr. Blount suffered mental anguish after Defendants confiscated his kufi, he does not dispute the conclusions that he persisted in his religious practice and his lawsuits against the prison, and thus was not chilled by the interaction. Doc. 73 at 22–23 (citing *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) ("Smith's persistence in maintaining his website offers some evidence that Plati's actions did not prevent such private speech.")). So, while Mr. Blount may have been harmed by the confiscation of his kufi, the recommendation is correct that he has not shown that that action, in this context, would deter a person of ordinary firmness from exercising his rights.

Third, Mr. Blount reiterates his objection to paragraphs 33 and 36 of the recommendation's fact section. For the reasons described above, those objections are insufficient to overrule the recommendation.

## CONCLUSION

Accordingly, it is **ORDERED** that:

The Report and Recommendation on Defendants' motion for summary judgment (Doc. 73) is **ACCEPTED** and **ADOPTED**; and

Defendants' motion (Doc. 38) is **GRANTED**. The clerk is directed to enter judgment in favor of Defendants and close the case.

DATED: December 23, 2020     BY THE COURT:

_____

Hon. Daniel D. Domenico